HOLLINGSWORTH KELLY
ATTORNEYS
3501 NORTH CAMPBELL AVENUE, SUITE 104
TUCSON, ARIZONA 85719
520.882.8080
FAX 520.882.0428

LOUIS HOLLINGSWORTH, SB #011534 / PCC #26935
MICHAEL F. KELLY, SB #022911 / PCC #65747
lhollingsworth@hollingsworthkelly.com
mkelly@hollingsworthkelly.com

**THE MARKAM GROUP, INC., P.S.**
421 W. RIVERSIDE, SUITE 1060
SPOKANE, WASHINGTON  99201
509.747.0902
FAX:  509.747.1993

MARK D. KAMITOMO, SB #031768
Mark@markamgrp.com
ATTORNEYS FOR PLAINTIFFS

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA, TUCSON DIVISION

| | |
|---|---|
| MANUEL CUEN, as surviving son of ARMIDA HERRERA; C.C., a minor, by and through his next friend, ADELA HERRERA; V.C., a minor, by and through her next friend, RIGOBERTO CAMPOY, <br><br> Plaintiffs, <br> vs. <br><br> UNITED STATES OF AMERICA <br><br> Defendants. | Case No.: <br><br> **COMPLAINT** <br><br> **(Wrongful Death-Medical Malpractice)** <br><br> Assigned: Hon. |

Plaintiffs, by and through their counsel undersigned, for their cause of action, allege as follows:

1.     At all times material hereto, plaintiffs MANUEL CUEN, C.C, a minor, and V.C., a minor, were residents of Pima County, Arizona.

2.     Plaintiffs are the natural children of Armida Herrera, deceased.

3.      All events described herein occurred in Pima County, Arizona.

4.      At all times material hereto, based on information and belief, defendant UNITED STATES OF AMERICA was acting by and through its agent, J. MANUEL ARREGUIN, M.D. ("ARREGUIN"), a physician practicing medicine in Pima County, Arizona and deemed to be a federal employee for the purposes of 42 U.S.C. § 233(c) and 28 U.S.C. § 2679(d).

5.      This Court has jurisdiction over the parties pursuant to 28 U.S.C. §1346(b).

6.      Plaintiffs allege that they have exhausted all of their administrative remedies and have satisfied the claim and notice requirements of the Federal Tort Claims Act.

7.      Venue is proper in the United States District Court of Arizona, Tucson Division, as all parties are located in Pima County.

8.      On or about January 4, 2013 through January 12, 2013, defendant provided medical services to Armida Herrera through its employee/agent DR. ARREGUIN as follows:

9.      On January 4, 2013 around 12:57 p.m., Armida Herrera (mother to plaintiffs Cuen, C.C. and V.C.), age 35 years old, presented to Tucson Medical Center emergency room nine days postpartum due to vaginal bleeding. Approximately half an hour prior to her admission to the emergency room, Ms. Herrera went to the bathroom and while using the bathroom, she experienced

HOLLINGSWORTH KELLY
ATTORNEYS
3501 NORTH CAMPBELL AVENUE, SUITE 104
TUCSON, ARIZONA 85719
520.882.8080
FAX 520.882.0428

vaginal bleeding sufficient to fill the toilet with blood.  She called 911, and EMTs estimated her blood loss at that time to be about a pint.

10.    Upon arrival in the emergency room, Ms. Herrera was described as "cool and clammy" and was complaining of abdominal pain.  At, or around 1:02 p.m. the physician noted the following:

a.  Her uterus was contracted, hard, and at the level of the umbilicus.

b.  She was also noted to have moderate to severe abdominal pain and tenderness in the mid-lower abdomen without evidence of rebound.

At or around 1:29 p.m. Ms. Herrera's condition was described as one that did not "warrant continuous monitoring" in the ER.  At, or around 1:40 p.m., Ms. Herrera was described as follows:

a.  Calm and cooperative;

b.  Ability to rise in a single moment;

c.  No loss of balance with steps;

d.  Cramping pain (10/10).

At or around 1:20 p.m. an intravenous line was started.  At or around 1:46 p.m. Ms. Herrera was given morphine in a dose of 4.0 mg IV and Zofran 4.0 mg IV.  At some time after 2:00 p.m. Ms. Herrera was taken to radiology for an ultrasound examination.  At or around 2:52 p.m. the following was documented:

a.  Her fundus was at the umbilicus;

b.  The cervix appeared stenotic:

HOLLINGSWORTH KELLY
ATTORNEYS
3501 NORTH CAMPBELL AVENUE, SUITE 104
TUCSON, ARIZONA 85719
520.882.8080
FAX 520.882.0428

c.  Evidence of bright red blood from the vagina;

d.  Recommended that she be taken to the operating room;

e.  Dr. Arreguin was on call for the group and would do surgery;

f.  Clots coming from cervix;

g.  His diagnosis was hematometra and anemia from blood loss.

Dr. Arreguin was timely informed of these findings yet failed to timely evaluate Ms. Herrera.  At or around 3:08 p.m. the ultrasound results were as follows:

a.  Uterus enlarged and 20 cm in length;

b.  Myometrium was thinner than expected for the patient's clinical presentation [<2 cm];

c.  Endometrial canal was filled with a large amount of amorphous material measuring 8 cm- most likely a large hematoma;

d.  Findings were consistent with a large hematoma within the endometrial canal;

e.  The findings were discussed with Dr. Ottman at 3:15 p.m.

At or around 3:12 p.m. Ms. Herrera stated that she would like more pain medications.  At or around 3:13 p.m. Ms. Herrera was given morphine 4.0 IV for pain.  At or around 3:16 p.m. a telephone call with Radiology where radiology reported that Ms. Herrera's uterus was larger than average and that she had a

HOLLINGSWORTH KELLY
ATTORNEYS
3501 NORTH CAMPBELL AVENUE, SUITE 104
TUCSON, ARIZONA 85719
520.882.8080
FAX 520.882.0428

hematoma.  She was given a 3rd dose of morphine 4.0 mg IV at, or around 3:17 p.m.

Dr. Arreguin called at or around 3:37 p.m. and said that he would come and see the patient and that she should be admitted to the hospital under him so that he could perform a D&C (dilation and curettage) procedure, however Dr. Arreguin deviated from the accepted standard of obstetrical care by delaying his evaluation of Ms. Herrera until 5:45pm (an additional 2 hours and 8 minutes).

At or around 5:45 p.m. Dr. Ottman ordered that Ms. Herrera be typed and screened for 2 units of blood and that a coagulation profile be obtained.  Ms. Herrera was already demonstrating signs consistent with hypovolemia (low blood volume) and her blood studies indicated an abnormal PT (prothrombin time) and an abnormal fibrinogen.  Despite Ms. Herrera's high risk clinical condition and her increased risk for extensive hemorrhage, as exemplified by her "large intrauterine hemorrhage," her enlarged uterus, and abnormal blood studies, Dr. Arreguin further delayed the surgical management of Ms. Herrera's hematometra.  This delay was a violation of the standard of care.

At or around 8:10 p.m. RN Harden documented the following: Ms. Herrera's boyfriend came to say that Ms. Herrera had agonal breathing; the patient's color was poor; Dr. Ottman said that patient was possibly having seizures; patient was placed on a nonrebreathing mask at 15 L/min; patient was breathing on her own.

HOLLINGSWORTH KELLY
ATTORNEYS
3501 NORTH CAMPBELL AVENUE, SUITE 104
TUCSON, ARIZONA 85719
520.882.8080
FAX 520.882.0428

As a result of Dr. Arreguin's failure to timely evaluate and treat Armida Herrera's hematometra, she sustained a cardiac arrest at or around 8:12 p.m., a code was called, and RN Jones documented the following: Increased bleeding; patient nonresponsive; face/lips/conjunctiva – pale; patient hooked up to defibrillator pads and connected to monitor.  Ms. Herrera was intubated and defibrillated due to ventricular fibrillation at, or around 8:16 p.m.  At, or around 8:24 p.m. she was placed on a ventilator.

At, or around 10:00 p.m., after it was too late, Ms. Herrera was finally taken to the operating room and at 10:10 p.m. Dr. Arreguin and Dr. Gaziano began surgery.  At, or around 10:59 p.m. a total abdominal hysterectomy was started.  Ms. Herrera never regained consciousness and died 8 days later.

Dr. Arreguin fell below the standard of care in care, treatment and evaluation of Armida Herrera including, but not limited to, his delay in taking her to surgery, which should have occurred immediately upon learning of her abnormal presentation.  Earlier medical including surgical management by Dr. Arreguin would have prevented Armida Herrera's death.  An autopsy performed January 16, 2013 demonstrated the following:

a. History of massive uterine hemorrhage and hematometra with D & C and subsequent abdominal hysterectomy;

b. Diffuse hypoxic ischemic encephalopathy;

c. Infarcts in the basal ganglia and cerebellum;

-6-

d.  Mild acute pancreatitis;

e.  Hepatic congestion;

f.  Acute myocardial infarction-posterior septal;

g.  Right fallopian tubal abscess with E. Coli and Enterococcus;

h.  Diffuse peritonitis;

i.  Acute bronchopneumonia;

j.  E. Coli sepsis.

11.    At all times material hereto, defendant UNITED STATES OF AMERICA and DR. ARREGUIN held out to the public, and in particular, Armida Herrera, that they were equipped, qualified, and prepared to receive the public, and in particular, Armida Herrera, for treatment and care, and that they employed and maintained skilled and competent physicians, nurses, and, in general, competent help otherwise in the conduct and operation of said health care provider facilities.

12.    At all times material hereto, defendant UNITED STATES OF AMERICA and DR. ARREGUIN had a duty to provide Armida Herrera with the services of competent, qualified, and licensed health care providers, to properly diagnose her conditions, to render competent advice and assistance in the care and treatment of her health, and to properly and timely perform medical or surgical procedures and to render the same in accordance with the standards

HOLLINGSWORTH KELLY
ATTORNEYS
3501 NORTH CAMPBELL AVENUE, SUITE 104
TUCSON, ARIZONA 85719
520.882.8080
FAX 520.882.0428

of care in the community. Armida Herrera relied upon defendant's covenant to provide competent care.

13.   Armida Herrera suffered injuries and death as a direct and proximate result of the negligence and medical malpractice of defendant UNITED STATES OF AMERICA through its employee/agent DR. ARREGUIN.

14.   The actions, omissions and failures of DR. ARREGUIN and defendant UNITED STATES OF AMERICA in their medical care and treatment of Armida Herrera constitute medical malpractice as defined by A.R.S. § 12-561.

15.   Plaintiffs suffered loss of normal care, comfort and companionship of their mother, Armida Herrera, mental and emotional anguish, pain, grief and sorrow; and loss of past and future financial support, benefit and services which might reasonably have been expected from decedent.

WHEREFORE, in view of the foregoing, plaintiffs pray for judgment against defendant as follows:

1.   For compensatory damages as and for the costs incurred for funeral and burial expenses as a result of the death of Armida Herrera; for loss of love, affection, companionship, care, protection, grief, sorrow, anguish, stress and mental and emotional suffering already experienced in the past and to be experienced in the future; for past and future economic loss; and for past and future loss of earnings of Armida Herrera in a fair and reasonable amount;

HOLLINGSWORTH KELLY
ATTORNEYS
3501 NORTH CAMPBELL AVENUE, SUITE 104
TUCSON, ARIZONA 85719
520.882.8080
FAX 520.882.0428

2.      For all costs incurred herein; and

3.      For such other and further relief as the Court deems just and proper.

DATED this 28rd day of October, 2015.

**HOLLINGSWORTH KELLY, PLLC**

By: /s/ Michael F. Kelly_____
     Louis Hollingsworth
     Michael F. Kelly
     John F. Kelly
     Mark D. Kamitomo

     3501 N. Campbell Ave. Ste. 104
     Tucson, AZ 85716
     (520) 882-8080
     lhollingsworth@hollingsworthkelly.com
     mkelly@hollingsworthkelly.com
     jkelly@hollingsworthkelly.com

     421 W. Riverside Ave. #1060
     Spokane, WA  99201
     (509) 747-0902
     mark@markamgrp.com

     *Attorneys for Plaintiff*

HOLLINGSWORTH KELLY
ATTORNEYS
3501 NORTH CAMPBELL AVENUE, SUITE 104
TUCSON, ARIZONA 85719
520.882.8080
FAX 520.882.0428